## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### Macon DIVISION

## QUESTIONNAIRE FOR PRISONERS PROCEEDING
## PRO SE UNDER 42 U.S.C. §1983

Chief Black Thunderbird "Eagle"

17911-054

(GIVE FULL NAME AND PRISON NUMBER OF EACH PLAINTIFF):

**Plaintiff(s)**

VS.

Dawn Baskin, Fred Bright,
Jalane Ward, Joan Cronier,
Maxwell Wood, Richard Moultrie,
Claude W. Hicks, Howard R. Sills
Tracey Bowen, Francis N. Ford,
Stephanie Thacker, Noel L. Wilson

(NAME OF EACH DEFENDANT)

**Defendant(s)**

**CIVIL ACTION NO.**

5:03-cv-0392-3

FIRST AMENDMENT 1 to
Document Filed on
Nov.24 2003 PM 3:02

### I. GENERAL INFORMATION

17911-054

1. Your full name **and** prison number  Chief Black Thunderbird "Eagle"

2. Name and location of prison where you are **now** confined  Jones County Sheriff
Department 123 Holmes Hawkins Dr. 31032

3. **Sentence you are now serving (how long?)**  Pre-trial Detainee N/A

   (a) **What were you convicted of?**  Pre-trial Detainee N/A

   (b) **Name and location of court which imposed sentence**  Pre-trial Detainee
N/A

   (c) **When was sentence imposed?**  N/A

   (d) **Did you appeal your sentence and/or conviction?**  ☐ Yes  ☒ No

   (e) **What was the result of your appeal?**  N/A

   (f) **Approximate date your sentence will be completed**  N/A

②

## II. PREVIOUS LAWSUITS

**4.** Other than the appeal of your conviction or sentence, have you ever submitted a lawsuit for filing in <u>any</u> federal or state court dealing with the <u>SAME FACTS</u> involved in this lawsuit or otherwise related to your imprisonment?    ☐ Yes    ☒ No

**5.** If your answer to question 4. is "Yes," list that lawsuit below, giving the following **information:** (IF YOU HAVE FILED MORE THAN ONE LAWSUIT, LIST OTHER LAWSUITS ON A SEPARATE SHEET OF PAPER, GIVING THE SAME INFORMATION FOR EACH)

(a) Parties to the previous lawsuit:

Plaintiff(s):    N/A

Defendant(s):    N/A

(b) Name of Court:    N/A

(c) Docket Number:    N/A    When did you file this lawsuit?  N/A

(d) Name of judge assigned to case:    N/A

(e) Is this case still pending   ☐ Yes   ☒ No

(f) If your answer to (e) is "No," when was it disposed of and what were the results? (DID YOU WIN? WAS THE CASE DISMISSED? DID YOU APPEAL?)

N/A

## III. PRESENT CONFINEMENT

**6.** Where are you <u>now</u> confined?    Jones County Sheriff Department

(a) How long have you been at this institution?    6 months

(b) Does this institution have a grievance procedure?   ☒ Yes   ☐ No

(c) If your answer to question 6(b) is "Yes," answer the following:

(1) Did you present your complaint(s) herein to the institution as a grievance?

☐ Yes   ☒ No

(2) What was the result?    N/A/

(d) What, if anything, have you done to bring your complaint(s) to the attention of prison officials? Give dates and places and the names of persons talked to.

American Correctional Association

Health Care Auditor-Tony Williams

4380 Torbes Blvd.    (See Attach Sheet)

**Attachment 6D.**

American Correctional Association
Tony Williams
Health Care Auditor
4380 Torbes Blvd.
Lanham, MD 20706-4327

USP Atlanta Regional
R.G. Holt
Director
3800 Camp Creek Parkway, Bldg. 2000
Atlanta, GA 30331

7. **In what other institutions have you been confined?  Give dates of entry and exit.**

(See Attached Sheet)

_____

_____

_____

_____

_____
                                        (Cont. on attached sheet)

## IV.  PARTIES TO THIS LAWSUIT

8. **List the name and address of each plaintiff in this lawsuit.**

| Kidnapping | Torture | (Cont. on attached sheet) |
| --- | --- | --- |
| Elizabeth York Westbrook | Victor Greg | |
| Kathy Johnson | Hagar Eatmon | |
| Diane Vincent | | |

9. **List the full name, the official position, and the place of employment of each defendant in this lawsuit.**  (ATTACH ADDITIONAL PAGES IF NECESSARY)

(See Attached Sheet)

_____

_____

_____

_____

_____

_____

## V.  STATEMENT OF CLAIM

10. In the space hereafter provided, and on separate sheets of paper, if necessary, set forth your claims and contentions against the defendant(s) you have named herein. Tell the court **WHAT** you contend happened to you, **WHEN** the incident(s) you complain about occurred, **WHERE** the incident(s) took place, **HOW** your constitutional rights were violated, and **WHO** violated them? Describe how each defendant was involved, including the names of other persons who were also involved.  If you have more than one claim, number and set forth each claim SEPARATELY.

Do not give any legal argument or cite any cases or statutes at this time;  if such is needed at a later time, the court will advise you of this and will afford you sufficient time to make such arguments.   KEEP IN MIND THAT RULE 8 OF THE *FEDERAL RULES OF CIVIL PROCEDURE* REQUIRES THAT PLEADINGS BE SIMPLE, CONCISE, AND DIRECT!  If the court needs additional information from you, you will be notified.

(See attached Sheet)

## STATEMENT OF CLAIM ATTACHMENT

### 7.

| DATE | LOCATION |
|------|----------|
| May 8, 2002 to Oct 25, 2002 | Atlanta U.S. Penitentiary |
| Oct 25, 2002 to Dec 13, 2002 | Clayton County Sheriff's Department |
| Dec 13, 2002 to Jan 24, 2003 | Putnam County Sheriff's Department |
| Jan 24, 2003 to July 28, 2003 | Jones County Sheriff's Department |
| July 28, 2003 to Aug 14, 2003 | Atlanta U.S. Penitentiary |
| Aug 14, 2003 to Oct 16, 2003 | Metropolitan Correction Center - NY |
| Oct 16, 2003 to Oct 19, 2003 | FTC Oklahoma City |
| Oct 20, 2003 to present | Jones County Sheriff's Department |

**Names, Official Positions and Addresses Referred from No. 9**

**F.B.I**
**Special Agent**: Jalane Ward
P.O Box 13046
Macon GA 31208
Tel# (478) 745-1271

**Special Agent**: Joan Cronier
P.O Box 98128
Atlanta GA 30359
Tel#(404) 679-9000

**U.S District Attorney**
Maxwell Wood
433 Cherry St.
Macon, GA 31202

**Asst. District Attorney**
Richard Moultrie
Stephanie Thacker
P.O Box1702
Macon GA 31202
Tel# (478) 752-3511

**Magistrate Judge**
Claude W. Hicks
P.O Box 48
Macon GA 31202
Tel# (478) 752-8125

**Special Prosecutor**
Howard Richard Sills
Sheriff Dept.
111 Ridley Dr.
Eatonton, GA 31024

**Detectives**:
Tracey Bowen / Noel Wilson
111 Ridley Drive
Eatonton GA 31024
Tel# (706) 485-8557

**Asst. District Attorney**
Dawn Baskin
Stephen Bradley
824 Oak St. Suite 2
Eatonton, GA. 31204

**District Attorney**
Fred Bright
121 N Wilkinson St.
Milledgeville, GA 31061

## V. STATEMENT OF CLAIM

1. Chief Black Thunder Bird "Eagle" has been tortured and tormented.

   1.1. On May 8, 2002 A.D. in a parking lot of a K-Mart Shopping Center in front of K-Beauty Supply Store in Milledgeville, Georgia U.S.A. at 2:45 PM, Federal Agents in unmarked uniforms came to the enclosed vehicle and broke the vehicle's windows with the butts of their guns shattering glass everywhere. Then the agents forced Chief Black Thunderbird "Eagle" against the adjacent car with two rifles while forcing the other passengers to the hot scorching ground with cocked rifles pointed at the back of their heads. There were no weapons found in the vehicle.

2. Identity of force(s) carrying out the initial detention and/or torture (police, intelligence services, armed forces, paramilitary, prison officials, other)

   2.1. United States Middle District Of Georgia
   Magistrate Judge Claude W. Hicks, Jr.
   P.O. Box 48
   Macon, GA 31202
   478-752-3497 Ext 4454 (Phone)

   2.2. United States District Attorney Maxwell Wood
   Asst. United States District Attorney Richard Moultrie
   Department Of Justice Stephanie Thacker
   PO Box 1702
   Macon, GA 31202
   478-752-3511 (Phone) 478-752-8155 (Fax)

   2.3. Superior Court Judge, Ocmulgee Judicial Circuit
   Judge William A. Prior
   PO Box 728
   Madison, GA 30650
   706-342-0672 (Phone) 706-342-3730 (Fax)

   2.4. District Attorney Fred Bright
   121 N. Wilkinson St.
   Milledgeville, GA 31061
   478-445-5261 (Phone) 478-445-5041 (Fax)

   2.5. Asst. District Attorney Dawn Baskin
   Asst. District Attorney Stephen Bradley
   824 Oak Street, Suite 2
   Eatonton, GA 31024

2.6. Putnam County Sheriff's Department Special Prosecutor Sheriff Howard Richard
Sills
111 Ridley Dr.
Eatonton, GA 31024

2.7. US Marshals Service
100 N. Franklin Street
Dublin, GA 31201
478-274-0559 (Phone)

2.8. Baldwin County Sheriff Department
Sheriff Bill Massee
311 Linda Drive
Milledgeville, GA 31061
478-445-4891 (Phone)

2.9. Federal Bureau of Investigation
First Liberty Bank Building
201 Second Street
Macon, GA 31201-2738
478-745-1271 (Phone)

3. Chief Black Thunderbird "Eagle" was denied regular visitation on the following
occasions.

3.1. While at Atlanta Federal Penitentiary May 14, 2002 A.D. – October 25, 2002
A.D. Chief Black Thunderbird "Eagle" was not able to receive visits for one
week  after being incarcerated at this facility.

3.2. While held at Clayton County Sheriff Department October 25, 2002 A.D. –
December 13, 2002 A.D. Chief Black Thunderbird "Eagle" was held three days
before gaining permission to have visits.

3.3. When transferred to Putnam County Sheriff Department Chief Black
Thunderbird "Eagle" was able to receive visits one day after arrival.

3.4. When transferred to Jones County Sheriff Department January 24, 2003 A.D. –
July 29, 2003 A.D. Chief Black Thunderbird "Eagle" was able to receive visits
one day after arrival.

3.5. When transferred to Atlanta Federal Penitentiary July 29, 2003 A.D. – August
14, 2003 A.D. during a hold over because Chief Black Thunderbird "Eagle"
collapsed from being very ill from not receiving Chief Black Thunderbird
"Eagle"'s medicine during a transfer to MCC New York for a psychological
evaluation. Chief Black Thunderbird "Eagle" was able to receive visits one week

after arrival.

3.6. When transferred to MCC New York Chief Black Thunderbird "Eagle" was permitted to receive visits after 30 days of incarceration.  Initially Chief Black Thunderbird "Eagle" was held on 9 South orientation, after 30 days Chief Black Thunderbird "Eagle" was transferred to 10 South, which is the highest level of security and classified for terrorist and serial killers. Chief Black Thunderbird "Eagle" was no longer allowed to receive visits for 30 days after one visit by the pastor and family members. Chief Black Thunderbird "Eagle" was Blindfolded, hoodwinked and chained to a brick bed when inquiring phone privileges.

4.  Places of detention and methods of torture

4.1. Chief Black Thunderbird "Eagle" has been moved several times and tortured at several different facilities since the time of arrest and kidnapping on May 8, 2002 A.D. The following instances violated Law 42 U.S.C. 14141, which was enacted in 1994. This law makes it unlawful for State or local law enforcement officers to engage in a pattern or practice of conduct that deprives persons of rights protected by the constitution or laws of the United States. These types of conduct covered by this law can include, among other things, the use of excessive force, discriminatory harassment, false arrest, coercive sexual conduct, and unlawful stops, searches or arrests.

4.1.1.  Atlanta Federal Penitentiary:  May 8, 2002 – October 24, 2002

4.1.1.1. Placed in a cell with convicted murderers and drug dealers.

4.1.1.2. Life was threatened on several occasions.

This violates Standard Minimum Rules for the Treatment of Prisoners: Adopted by the First United nations Congress on the prevention of Crime and the Treatment of Offenders, held at Geneva in 1955, land approved by the Economic and Social Council by its resolution 63 C (XXIV) of 31 July 1957 and 2076 (LXII) of 13 May 1977: Section Preliminary Observations (in part), Rule 8 (b), stating "8. The different categories of prisoners shall be kept in separate institutions or parts of institutions taking account of their sex, age, criminal record, the legal reason for their detention and the necessities of their treatment. Thus: (b) Untried prisoners shall be kept separate for convicted prisoners"

4.1.1.3. Food was pushed underneath the door to the cell where oftentimes part of the meal would be scraped off due to the insufficient amount of space from the bottom of the door to the floor causing bacteria and germs to get on the food.

4.1.1.4. Served discolored water.

4.1.1.5. Denial of Kosher food, which was necessary for health reasons.

> This violates Standard Minimum Rule Section Food Rule 20 (1-2) "(1) Every prisoner shall be provided by the administration at the usual hours with food of nutritional value adequate for health and strength, of wholesome quality and well prepared and served. (2) Drinking water shall be available to every prisoner whenever he needs it."

4.1.1.6. Placed in a cell, at Atlanta Federal Penitentiary from May 14, 2002 – October 25, 2002, built for two, but housing up to six men at a time.

4.1.1.7. Forced to sleep on the cold hard concrete floor with rats and roaches.

> This violates Standard Minimum Rule Section Preliminary Observations Rules 9&10. "9. (1) Where sleeping accommodation is in individual cells or rooms, each prisoner shall occupy by night a cell or room by himself. If for special reasons, such as temporary overcrowding, it becomes necessary for the central prison administration to make an exception to this rule, it is not desirable to have two prisoners in a cell or room. 10. All accommodation provided for the use of prisoners and in particular all sleeping accommodation shall meet all requirements of health, due regard being paid to climatic conditions and particularly to cubic content of air, minimum floor space, lighting, heating and ventilation."

4.1.1.8. Only allowed to shower three times a week for only 5-minutes at a time.

> This violates Standard Minimum Rule Section Preliminary Observations (in part) Rule (13) "13. Adequate bathing and shower installations shall be provided so that every prisoner may be enabled and required to have a bath or shower, at a temperature suitable to the climate, as frequently as necessary for general hygiene according to season and geographical region, but at least once a week in a temperate climate."

4.1.1.9. Placed in stressful conditions despite the suffering from a life threatening disease called Hereditary Angiodema, in which the throat could swell, causing migraine headaches, extreme breakout of hives, nausea, seizures, and massive swelling if placed under stressful conditions.

4.1.1.10.   Denied medication for days at a time and as a result has had several seizures. The first of which happened two weeks after

incarceration.

4.1.1.11.   Both the prison officials and Law Enforcement officials repeatedly denied physician, Dr. William Thompson, MD access.

4.1.1.12.   Transferred illegally without a trial from the Federal Government to the custody of the State Of Georgia for the State Trial to proceed first, a violation of the Federal Speedy Trial Act 18 U.S.C. § 3161-3174)

4.1.2.   Clayton County Sheriff Department October 25, 2002 – December 13, 2002

4.1.2.1. Medical attention was ignored.
4.1.2.2. Put in double solitary confinement.
4.1.2.3. Denied access to fresh air.
4.1.2.4. Not checked on.

This violates Standard Minimum Rule Section Medical Services (25-26) "25. (1) The medical officer shall have the care of the physical and mental health of the prisoners and should daily see all sick prisoners, all who complain of illness, and any prisoner to whom his attention is specially directed. 26. (1) The medical officer shall regularly inspect and advise the director upon:" The quantity, quality, preparation and service of food; The hygiene and cleanliness of the institution and the prisoners; The sanitation, heating, lighting and ventilation of the institution; The suitability and cleanliness of the prisoner's clothing and bedding;

4.1.3.   Putnam County Sheriff Department December 13, 2002 – January 24, 2002

4.1.3.1. The facility is unclean

Standard Minimum Rules for the Treatment of Prisoners Section Preliminary Observations (in part), Rule (12) "12. The sanitary installations shall be adequate to enable every prisoner to comply with the needs of nature when necessary and in a clean and decent manner."

4.1.3.2. Put in a cell with a convicted killer and classified as a high risk prisoner as a pre trial detainee.

This violates Standard Minimum Rules for the Treatment of Prisoners: Section Preliminary Observations (in part), Rule 8 (b), stating 8. The different categories of prisoners shall be kept in separate institutions or parts of institutions taking account of their sex, age, criminal record,

the legal reason for their detention and the necessities of their treatment. Thus: (b) untried prisoners shall be kept separate for convicted prisoners.

4.1.3.3. The temperature was kept at below 50 Degrees Fahrenheit; during the Winter Months.

4.1.3.4. Food was often cold and messed over.

4.1.3.5. Medication was often skipped and wrong dosages were given

This violates Standard Minimum Rule Section Medical Services (25) "25. (1) The medical officer shall have the care of the physical and mental health of the prisoners and should daily see all sick prisoners, all who complain of illness, and any prisoner to whom his attention is specially directed.

4.1.4. Jones County Sheriff Department January 24, 2003 – July 29, 2003

4.1.5. MCC New York August 14, 2003 – October 17, 2003

4.1.5.1. Transferred during the Black out on August 14, 2003; thus was unable to bathe for several days.

This violates Standard Minimum Rule Section Preliminary Observations (in part) Rule (13) "13. Adequate bathing and shower installations shall be provided so that every prisoner may be enabled and required to have a bath or shower, at a temperature suitable to the climate, as frequently as necessary for general hygiene according to season and geographical region, but at least once a week in a temperate climate."

4.1.5.2. Given one set of used old under clothes, and one used wash cloth and wasn't changed for three weeks. No hygiene products were given, or allowed to be purchased.

This violates Standard Minimum Rules for the Treatment of Prisoners: Section Clothing and bedding Rule: "17. (1) Every prisoner who is not allowed to wear his own clothing shall be provided with an outfit of clothing suitable for the climate and adequate to keep him in good health. Such clothing shall in no manner be degrading or humiliating. (2) All clothing shall be clean and kept in proper condition. Underclothing shall be changed and washed as often as necessary for the maintenance of hygiene. (3) In exceptional circumstances, whenever a prisoner is removed outside the institution for an authorized purpose, he shall be allowed to wear his own clothing or other

inconspicuous clothing. 19. Every prisoner shall, in accordance with local or national standards, be provided with a separate bed, and with separate and sufficient bedding which shall be clean when issued, kept in good order and changed often enough to ensure its cleanliness."

4.1.5.3. When complaint letters were sent as a cc: to this facility, MCC New York, Chief Black Thunderbird "Eagle" was tortured more.

4.1.5.4. Placed on the worst possible floor 10 South located on the roof, where convicted Terrorists are housed.

This violates Standard Minimum Rules for the Treatment of Prisoners: Section Preliminary Observations (in part), Rule 8 (b) stating, "8. The different categories of prisoners shall be kept in separate institutions or parts of institutions taking account of their sex, age, criminal record, the legal reason for their detention and the necessities of their treatment. Thus: (b) Untried prisoners shall be kept separate for convicted prisoners"

4.1.5.5. Forced to co-inhabit with inmates that have a religious and racial conflict of interest.

This violates Standard Minimum Rules for the Treatment of Prisoners: Section Preliminary Observations (in part), Rule 9 (2) stating, "9 (2) Where dormitories are used, they shall be occupied by prisoners carefully selected as being suitable to associate with one another in those conditions. There shall be regular supervision by night, in keeping with the nature of the institution."

4.1.5.6. Phone use was limited to once a month and visits were blocked during time spent at this facility.

This violates Standard Minimum Rules for the Treatment of Prisoners: Section Contact with the outside world (in part), Rule (37), "Prisoners shall be allowed under necessary supervision to communicate with their family and reputable friends at regular intervals, both by correspondence and by receiving visits."

4.1.5.7. No access to fresh air at any time.

This violates Standard Minimum Rules for the Treatment of Prisoners: Section Exercise and Sport (in part), Rule 21 (1) stating, "(1) Every prisoner who is not employed in outdoor work shall have at least one hour of suitable exercise in the open air daily if the weather permits."

4.1.5.8. Placed in a Rat and Roach infested room. Complaints were not answered. Room later flooded.

Standard Minimum Rules for the Treatment of Prisoners Section Preliminary Observations (in part), Rule (12) "12. The sanitary installations shall be adequate to enable every prisoner to comply with the needs of nature when necessary and in a clean and decent manner."

4.1.5.9. Forced to rest handcuffed to a brick bed with four square holes located at each corner connected with metal bars through the middle.

This violates Standard Minimum Rules for the Treatment of Prisoners: Section Clothing and Bedding Rule (19), "Every prisoner shall, in accordance with local or national standards, be provided with a separate bed, and with separate and sufficient bedding which shall be clean when issued, kept in good orders and changed often enough to ensure its cleanliness."

This violates Standard Minimum Rules for the Treatment of Prisoners: Section Preliminary Observations (in part), Rule (10,12) "10. All accommodation provided for the use of prisoners and in particular all sleeping accommodation shall meet all requirements of health, due regard being paid to climatic conditions and particularly to cubic content of air, minimum floor space, lighting, heating and ventilation. 12.The sanitary installations shall be adequate to enable every prisoner to comply with the needs of nature when necessary and in a clean and decent manner."

4.1.6.  Oklahoma Federal Penitentiary October 17- October 21, 2003

4.2. Injuries from torture

4.2.1.  Several seizures

4.2.2.  Breakouts and swelling

4.2.3.  Scares on wrists and ankles from shackles

4.2.4.  Bruises from excessive force

4.2.5.  Deterioration of health and eye sight

4.2.6.  Childhood asthma surfaced

4.2.7.  Illness called Acquired Hereditary Angioedema became more severe due to torture, now making it Acute Exacerbation of Angio Edema

4.3. No treatment was given as result of injuries

4.4. Remedial Action was taken and correspondence to the following legal and administrative authorities resulted in the following

Hon. Claude W. Hicks, Jr.                     No Reply/No Action Taken
U.S. Magistrate Judge
P.O. Box 48
Macon, Georgia 31202 U.S.A.

John Ashcroft                                 No Reply/No Action Taken
Attorney General of The United States
United States Department of Justice
Washington, D.C. 20530 U.S.A.

Theresa Weathers                              Did Reply/Actions Taken
United States Department of Justice                    Unknown
Civil Rights Division
Washington, D.C. 20530 U.S.A.

Hon. Judge Rosalyn Higgins                    Did Reply/ No Action Taken
International Court of Justice
Peace Place 2517 KJ The Hague
Netherlands

Hon. Judge P.H. Kooijmans                     Did Reply/Action Unknown
International Court of Justice
Peace Place 2517 KJ The Hague
Netherlands

Mr. Carla Edelenbos                           Did Reply/No Action Taken
Human Rights Officer
United Nations High Commissioner for
Human Rights
Ppalais des Nations
CH-1211 Geneva 10

Thurbert E. Baker                             No Reply/ No Action Taken
Attorney General of The State of Georgia
Capital Square, South West
Atlanta, Georgia 30334 U.S.A.

Larry D. Thompson                             No Reply/ No Action Taken
U.S. Deputy Attorney General
Capital Square, South West
Atlanta, Georgia 30334 U.S.A.

Jack D. Lockridge                             No Reply/ No Action Taken

Executive Director
The Federal Bar Association
Washington, D.C. U.S.A.

R.E. Holt                                    Did Reply/ No Action Taken
Regional Director
U.S. Department of Justice
Federal Bureau of Prisons
Southeast Regional Office
Building 2000
3800 Camp Creek Parkway, S.W.
Atlanta, Georgia 30331-6226 U.S.A.

4.5. Was told the purpose of arrest was for money fraud

4.6. Was never read the Miranda Rights

4.7. Denied Bond for the reason given by Judge Claude Hicks Jr. "If released, these acts would continue", thus a violation of presumption of innocence

4.8. Relevant Legislation Applied

   4.8.1. Federal Indictment (5:02-Cr-27) Signed On May 2, 2002 A.D. By Grand Jury Of United States Middle District Of Georgia, Usa. 4 Counts In Violation Of 18 Usc § 3283 And 18 Usc § 2423 Interstate Transport Of Minors For Unlawful Sexual Activity, Coercion Or Enticement Of A Minor Female, And 31 Usc § 5324 Structuring Transactions To Avoid Reporting Requirements.

   4.8.2. May 14, 2002 A.D. Indicted By The State Of Georgia (2002 Cr 229-10), Putnam County On 120 Counts Of Child Molestation In Violation Of O.C.G.A. § 16-6-4 (A), O.C.G.A. § 16-6-4 (C), And O.C.G.A. §16-6-5. State Of Georgia Re-Indicted On October 2, 2002 A.D. For An Additional 97 Counts Bringing All The Charges To 208.

4.9. Torture and incarceration continues after medical evidence shows a negative result for Herpes I and Chlamydia which some of the alleged victims have.

4.10.     While under Duress, Chief Black Thunderbird "Eagle" was coerced into signing a Plea Agreement.

4.11.     Character has been assassinated in the media by Rob Peecher of the Macon Telegraph, Bill Osinski of the Atlanta Journal Constitution, and Karen Sloan of the Brunswick News.

4.12.    Video taped by Putnam County Sheriff's Department while under Duress and coerced into signing a Plea Agreement.  Video tape was sold to the public and placed on the World Wide Web, Internet.

5.  Attachment A – Letters returned from U.S. Department of Justice
6.  Attachment B – Affidavit from Dr. William Thompson, M.D. concerning the denial of treatment and medical condition of Chief Black Thunderbird "Eagle"



**U.S. Department of Justice**

Federal Bureau of Prisons

*Southeast Regional Office*

---

September 10, 2003

Building 2000
3800 Camp Creek Parkway SW
Atlanta, Georgia 30331-6226

S. Maria Flores
233 Davis Road, Suite D
Augusta, Georgia 30909

RE: YORK, Dwight
    Reg. No. 17911-054

Dear Ms. Flores:

This is in response to your letter received in this office in reference to Dwight York. Mr. York is currently incarcerated at the Metropolitan Correctional Center in New York City, New York. You express concern regarding the diagnosis, medical evaluations and treatment provided to Mr. York while incarcerated at the United States Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover" status intermittently since 2002. Upon his arrival, Mr. York received appropriate medical treatment. In accordance with policy, he has received quarterly medical evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of Childhood Asthma and Acquired Angio-Edema. When he presented symptoms consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and treated. Additionally, he was prescribed medication to prevent and decrease the severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical staff who are trained and certified commensurate with community standards and within the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R. E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York



U.S. Department of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

---

September 10, 2003

*Building 2000*
*3800 Camp Creek Parkway, S.W.*
*Atlanta, Georgia 30331-6226*

Jay Davis
1227 Augusta West Parkway
Augusta, Georgia 30909

RE:  YORK, Dwight
      Reg. No. 17911-054

Dear Mr. Davis:

This is in response to your letter received in this office in reference to Dwight York
Mr. York is currently incarcerated at the Metropolitan Correctional Center in
New York City, New York. You express concern regarding the diagnosis, medical
evaluations and treatment provided to Mr. York while incarcerated at the United States
Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover"
status intermittently since 2002. Upon his arrival, Mr. York received appropriate
medical treatment. In accordance with policy, he has received quarterly medical
evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of
Childhood Asthma and Acquired Angio-Edema. When he presented symptoms
consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and
treated. Additionally, he was prescribed medication to prevent and decrease the
severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical
staff who are trained and certified commensurate with community standards and within
the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R.E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York



U.S. Department of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

---

September 10, 2003

*Building 2000*
*3800 Camp Creek Parkway, S.W.*
*Atlanta, Georgia 30331-6226*

Ernst & Verna Cleophat
3712B Wrightsboro Road
Augusta, Georgia 30909

RE: YORK, Dwight
    Reg. No. 17911-054

Dear Mr. & Mrs. Cleophat:

This is in response to your letter received in this office in reference to Dwight York. Mr. York is currently incarcerated at the Metropolitan Correctional Center in New York City, New York. You express concern regarding the diagnosis, medical evaluations and treatment provided to Mr. York while incarcerated at the United States Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover" status intermittently since 2002. Upon his arrival, Mr. York received appropriate medical treatment. In accordance with policy, he has received quarterly medical evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of Childhood Asthma and Acquired Angio-Edema. When he presented symptoms consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and treated. Additionally, he was prescribed medication to prevent and decrease the severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical staff who are trained and certified commensurate with community standards and within the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R. E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York



**U.S. Department of Justice**

Federal Bureau of Prisons

*Southeast Regional Office*

---

September 10, 2003

*Building 2000*
*3800 Camp Creek Parkway, S.W.*
*Atlanta, Georgia 30331-6226*

Chavis Lipscomb
2533 Fanning Oaks Drive
Winston-Salem, North Carolina 27107

RE:  YORK, Dwight
       Reg. No.  17911-054

Dear Mr. Lipscomb:

This is in response to your letter received in this office in reference to Dwight York. Mr. York is currently incarcerated at the Metropolitan Correctional Center in New York City, New York.  You express concern regarding the diagnosis, medical evaluations and treatment provided to Mr. York while incarcerated at the United States Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover" status intermittently since 2002.  Upon his arrival, Mr. York received appropriate medical treatment.  In accordance with policy, he has received quarterly medical evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of Childhood Asthma and Acquired Angio-Edema.  When he presented symptoms consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and treated.  Additionally, he was prescribed medication to prevent and decrease the severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical staff who are trained and certified commensurate with community standards and within the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R. E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York

U.S. Department of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

September 10, 2003

Building 2000
3800 Camp Creek Parkway, S.W.
Atlanta, Georgia 30331-6226

C. Abdullah
P. O. Box 6796
Macon, Georgia 31208

RE: YORK, Dwight
     Reg. No. 17911-054

Dear Ms. Abdullah:

This is in response to your letter received in this office in reference to Dwight York. Mr. York is currently incarcerated at the Metropolitan Correctional Center in New York City, New York. You express concern regarding the diagnosis, medical evaluations and treatment provided to Mr. York while incarcerated at the United States Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover" status intermittently since 2002. Upon his arrival, Mr. York received appropriate medical treatment. In accordance with policy, he has received quarterly medical evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of Childhood Asthma and Acquired Angio-Edema. When he presented symptoms consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and treated. Additionally, he was prescribed medication to prevent and decrease the severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical staff who are trained and certified commensurate with community standards and within the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R. E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York



U. S. Department of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

September 10, 2003

*Building 2000*
*3800 Camp Creek Parkway, S.W.*
*Atlanta, Georgia 30331-6226*

Diahann C. Stephens
227 Rocksprings Homes
Athens, Georgia 30606

RE:  YORK, Dwight
     Reg. No.  17911-054

Dear Ms. Stephens:

This is in response to your letter received in this office in reference to Dwight York. Mr. York is currently incarcerated at the Metropolitan Correctional Center in New York City, New York.  You express concern regarding the diagnosis, medical evaluations and treatment provided to Mr. York while incarcerated at the United States Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover" status intermittently since 2002.  Upon his arrival, Mr. York received appropriate medical treatment.  In accordance with policy, he has received quarterly medical evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of Childhood Asthma and Acquired Angio-Edema.  When he presented symptoms consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and treated.  Additionally, he was prescribed medication to prevent and decrease the severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical staff who are trained and certified commensurate with community standards and within the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R. E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York

U.S. Department of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

September 10, 2003

*Building 2000*
*3800 Camp Creek Parkway, S.W.*
*Atlanta, Georgia 30331-6226*

J. S. Youngblood
173 Shady Dale Road
Eatonton, Georgia 31024

RE:  YORK, Dwight
     Reg. No.  17911-054

Dear Ms. Youngblood:

This is in response to your letter received in this office in reference to Dwight York.
Mr. York is currently incarcerated at the Metropolitan Correctional Center in
New York City, New York.  You express concern regarding the diagnosis, medical
evaluations and treatment provided to Mr. York while incarcerated at the United States
Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover"
status intermittently since 2002.  Upon his arrival, Mr. York received appropriate
medical treatment.  In accordance with policy, he has received quarterly medical
evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of
Childhood Asthma and Acquired Angio-Edema.  When he presented symptoms
consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and
treated.  Additionally, he was prescribed medication to prevent and decrease the
severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical
staff who are trained and certified commensurate with community standards and within
the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R. E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York



U.S. Department of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

---

September 10, 2003

*Building 2000*
*3800 Camp Creek Parkway, S.W*
*Atlanta, Georgia 30331-6226*

Elizabeth York
P. O. Box 6769
Athens, Georgia 30604

RE:  YORK, Dwight
     Reg. No.  17911-054

Dear Ms. York:

This is in response to your letter received in this office in reference to Dwight York. Mr. York is currently incarcerated at the Metropolitan Correctional Center in New York City, New York.  You express concern regarding the diagnosis, medical evaluations and treatment provided to Mr. York while incarcerated at the United States Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover" status intermittently since 2002.  Upon his arrival, Mr. York received appropriate medical treatment.  In accordance with policy, he has received quarterly medical evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of Childhood Asthma and Acquired Angio-Edema.  When he presented symptoms consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and treated.  Additionally, he was prescribed medication to prevent and decrease the severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical staff who are trained and certified commensurate with community standards and within the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R. E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York

*Received -*
*C 1st wk in Dec*

U.S. Department of Justice

Federal Bureau of Prisons

*Southeast Regional Office*

September 10, 2003

Building 2000
3800 Camp Creek Parkway, S.W.
Atlanta, Georgia 30331-6226

Jacklyn Gayle
248 Tom Hill Sr. Boulevard, #151
Macon, Georgia 31210

RE: YORK, Dwight
    Reg. No. 17911-054

Dear Ms. Gayle:

This is in response to your letter received in this office in reference to Dwight York. Mr. York is currently incarcerated at the Metropolitan Correctional Center in New York City, New York. You express concern regarding the diagnosis, medical evaluations and treatment provided to Mr. York while incarcerated at the United States Penitentiary (USP) in Atlanta, Georgia.

A review of our records revealed Mr. York was housed at USP Atlanta on "holdover" status intermittently since 2002. Upon his arrival, Mr. York received appropriate medical treatment. In accordance with policy, he has received quarterly medical evaluations in the Chronic Care Clinic to monitor his pre-existing medical diagnosis of Childhood Asthma and Acquired Angio-Edema. When he presented symptoms consistent with Acute Exacerbation of Angio-Edema, Mr. York was evaluated and treated. Additionally, he was prescribed medication to prevent and decrease the severity of his symptoms.

Mr. York was afforded adequate medical care while housed at USP Atlanta by medical staff who are trained and certified commensurate with community standards and within the levels of care established by Bureau of Prisons' policy.

I trust this information will be helpful in answering your concerns.

Sincerely,

R. E. Holt
Regional Director

cc: Gregory Parks, Warden, MCC New York

STATE OF GEORGIA
COUNTY OF BALDWIN

## AFFIDAVIT

Affiant, William S. Thompson, M.D., having been duly sworn, states on oath that:

I am over the age of eighteen (18) years, suffer from no legal disabilities and make this affidavit voluntarily.

I am a physician licensed to practice medicine in the State of Georgia.

For the past seven (7) years, I have been and continue to act as the private physician of Rev. Dr. Malachi Z. York.

I have observed the following facts and have formed an opinion based on the facts hereinbelow:

- On May 8, 2002, following the arrest of Dr. York, I informed the U.S. Marshal Service that Dr. York suffers from a life-threatening illness that is triggered by emotional stress and mental trauma.
- On or about May 9, 2002, I also informed Rodrigo August, a physician assistant, of my patient's condition.
- On or about May 10, 2002, I told Dr. Ivan Negrone about my patient's condition and, at that time, Dr. Negrone personally assured me that he had managed at least one such case before and there would be "no problems."
- On May 11, 2002, per the instructions of Dr. Negrone, I submitted a summary of Dr. York's medical care to the U.S. Prison Health Services in Atlanta via facsimile. Thereafter, I called several times on that Saturday and the following Sunday for confirmation that the summary had been received, but to no avail.
- On Monday, May 13, 2002, I spoke with Dr. Ramone, the Clinical Director, who told me that he had received the faxed summary of medical care and was, at that moment, reviewing it. Dr. Ramone and I discussed the care of Rev. Dr. Malachi Z. York and I was told that his care would be properly managed.
- On May 14, 2002, at the bond hearing of Rev. Dr. York, the attorney for Dr. York informed me that the family members of Dr. York family had given him a copy of the summary of medical care; I had presented a copy of the summary to the family members on 1 :day, May 10, 2002.

- Between May 14, 2002, through and including May 20, 2002, I learned through the family of Dr. York that he had suffered at least two (2) episodes of flare-ups of his ailment, hereditary angio-edema, with tightening of his throat and near-asphyxiation. Consequently, I contacted the prison doctors and pharmacists and informed them of Dr. York's medication needs and was assured by these individuals that my patient would be cared for properly.

- Throughout the remainder of May 2002 and June 2002, I continuously made attempts to personally visit my patient. On several occasions, I spoke with Latease Bailey, an attorney with the prison legal department. Upon her instructions, I faxed a written request to Ms. Bailey seeking to obtain information on my patient's condition. I have as yet to hear from Ms. Bailey or receive a response to my request despite numerous messages left for her.

- In July 2002, I spoke with Mr. Raiez, the Health Administrator, on at least one occasion following several messages, and was questioned about my unusual interest in this specific inmate. In turn, I explained to Mr. Raiez the seriousness of Dr. York's condition and further stated to him that I have assisted Dr. York's physicians in his proper care. Morever, I told Mr. Raiez that Dr. York was not only my patient, but also my minister.

- Affiant further states that since my attempts to visit my patient were unsuccessful, I asked Marcia Hernandez, a representative with the personnel department, about the availability of employment with the prison's infirmary. Initially, I was told there were some possible positions available; however, as the individual interview sessions drew nearer, Ms. Hernandez informed me that the dates for the interviews had been pushed back. Finally, she informed me that she would contact me sometime later in August 2002. I never heard from Ms. Hernandez again, nor was I able to reach the doctors.

- During the months of July 2002, August 2002 and September 2002, the family of Rev. Dr. York informed me that Dr. York's flare-ups had become more frequent.

- On October 4, 2002, Dr. York, via written correspondence, told me that his attacks are becoming more severe with the increased stress of being incarcerated and the change in climate.

Affiant further states that he has explained to the prison doctors, as well as the prison legal department, that Dr. York's condition is life-threatening.

Affiant further states that according to the Mayo Medical Clinic of Rochester, Minnesota, a patient with such ailment has a 30% chance of dying from asphyxiation.

That it is Affiant's strong belief and observation, based upon the traumatic method in which Dr. York was arrested and the less than adequate care he is receiving while in his present stressful state, there is an outright attempt by the state and federal officials to cause his demise by way of his ailment, thus leaving their hands clean.

All statements in this affidavit are true and based upon my personal knowledge.

This _17_ day of ___October___, 2002.


_William S. Thompson, MD._
William S. Thompson, M.D.

Sworn to and subscribed before me
this/the 17 day of _Oct_, 2002.

_____
Notary public
My Commission Expires:_4/7/03_

